**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| URBAN ONE, INC., d/b/a iPOWER RICHMOND and iPOWER 92.1 | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | Case No ___3:17cv624_____ |
| | ) | |
| AMIR SHABAZZ (a/k/a HENNY HARDAWAY) | ) ) | |
| and | ) | |
| TWITTER, INC. | ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiff Urban One, Inc., d/b/a iPower 92.1 and iPower Richmond, by and through its undersigned attorney, for its Complaint against defendants Amir Shabazz (a/k/a Henny Hardaway) and Twitter, Inc., upon information and belief, hereby alleges as follows:

## JURISDICTION

1. Urban One, Inc. is a Delaware corporation with its principal place of business at 1010 Wayne Avenue, 14th Floor, Silver Spring, MD 20910. Directly, and through its subsidiaries and affiliates, Urban One owns and/or operates more than 50 radio stations in 15 cities in the United States. Urban One, Inc. owns the Richmond-based radio station WCDX-FM, which is branded as iPower Richmond and iPower 92.1.

2. Defendant Amir Shabazz was a part-time radio personality at iPower Richmond who used the on-air name "Henny Hardaway" until his employment was terminated on August 11, 2017. Upon information and belief, Amir Shabazz currently resides in Georgia where he operates Shabazz Media Group.

3.     This Court has original jurisdiction under the trademark laws of the United States, 15 U.S.C. § 1051, et seq., 18 U.S.C. § 1832, et seq., 18 U.S.C. § 1030, et. seq., and the laws of the Commonwealth of Virginia.

4.     This Court also has jurisdiction under 28 U.S.C. § 1332(a), in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, $75,000.

5.     This Court also has subject matter jurisdiction over iPower Richmond's Lanham Act claims as federal questions pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a)-(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has pendent jurisdiction over the Virginia state claims under 28 U.S.C. § 1338(b).

## VENUE

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 1400.

## THE PARTIES

7.     Urban One, Inc. owns and operates WCDX-FM radio station, branded as iPower Richmond and iPower 92.1 (hereinafter referred to as "Plaintiff" or "iPower Richmond").

8.     Defendant Amir Shabazz ("Shabazz") was a part-time radio personality at iPower Richmond who used the on-air name "Henny Hardaway" until his employment was terminated at the radio station on August 11, 2017. Upon information and belief, Amir Shabazz currently resides in Georgia.

9.     Defendant Twitter, Inc., ("Twitter") is a Delaware corporation with its principal place of business in California. Twitter operates a global platform for self-expression via short messages known as "tweets." Upon information and belief, Twitter has more than 300 million active monthly users.

## **FACTUAL ALLEGATIONS**

10.     In 2009, iPower Richmond created a Twitter account to advertise, gain followers, increase its social media presence, and increase overall revenue.

11.     iPower Richmond's Twitter account used the username or handle "@iPowerRichmond."

12.     Over the course of the following approximately eight years, iPower Richmond radio station increased its Twitter audience to approximately 12,500 followers.

13.     Upon information and belief, Plaintiff has communicated electronically with followers through its Twitter Account, and those communications were stored electronically in the Plaintiff's Twitter Account.

14.     iPower Richmond derived independent economic value from information available through its Twitter account, which it has developed through many years of substantial time, effort, expense, research and communication with its followers.

15.     iPower Richmond took, and continues to take reasonable steps to maintain the secrecy of its proprietary information, including restricting access to, and distribution of, this confidential information only to employees and agents of iPower Richmond who need the information and/or access to perform services on behalf of iPower Richmond.

16.     The confidential information includes, but is not limited to, the following: the passwords to iPower Richmond's Twitter account, including "@iPowerRichmond" used by iPower Richmond and its agents and employees, and list of followers (collectively, the "Confidential Information").

17.     The Confidential Information is not generally known or readily accessible, and is maintained in confidence by iPower Richmond, with limited access provided to agents and

employees of iPower Richmond. iPower Richmond has at all times taken reasonable steps to protect such Confidential Information from being stolen or misused. The Confidential Information would be of substantial value to iPower Richmond's competitors if it became known to them.

18.     On September 9, 2015, iPower Richmond hired Amir Shabazz as a part-time radio personality.

19.     During and within the course of his employment with iPower Richmond, and as an agent and employee of iPower Richmond, Amir Shabazz was permitted access to iPower Richmond's password-protected social media account at www.twitter.com/ipowerichmond, to disseminate information and to promote iPower Richmond to the public and its Twitter followers.

20.     On Friday, August 11, 2017 iPower Richmond terminated Amir Shabazz's employment.

21.     At the time of his termination, iPower Richmond had approximately 12,500 followers. Upon information and belief, according to some industry standards, each Twitter follower is valued at approximately $2.50/month. Given iPower Richmond's approximately 12,500 followers on or about August 11, 2017, the Twitter account had a value of $31,250/month.

22.     Sometime between the evening of Friday, August 11, 2017 and the morning of Saturday, August 12, 2007, Amir Shabazz used iPower Richmond's Confidential Information to access iPower Richmond's Twitter account.

23.     Amir Shabazz logged in to iPower Richmond's Twitter account and changed the username from "iPowerRichmond" to "RealTalkofVa."

24.     Mr. Shabazz began communicating with iPower Richmond's followers without the permission of iPower Richmond.

25.     Mr. Shabazz communicated lewd and/or pornographic material to iPower Richmond's followers without the permission of iPower Richmond.

26.     Amir Shabazz then changed the iPowerRichmond Twitter account username from "RealTalkofVa" to "HennyTalk75," and deleted all prior posts. *See* Exhibit A.

27.     On August 27, 2017 at 5:04 PM, Amir Shabazz tweeted to iPower Richmond's approximately 12,500 followers, under the username of "Henny Hardaway @HennyTalk75" the following: "Time to start on a clean slate. #myfirsttweet." *See* Exhibit B.

28.     Amir Shabazz has used the stolen "followers" to advertise for his own enterprise "Shabazz Media Group." *See* Exhibit C (September 8, 2017 Tweet: "Follow my company @ShabazzMediaGrp").

29.     Amir Shabazz also created a new account with the username "iPowerRichmond" to prevent the radio station from being able to use that username again. *See* Exhibit D.

30.     Mr. Shabazz's use of the iPower Richmond account and communication with its followers is, and was done in an attempt to discredit iPower Richmond, destroy confidence in iPower Richmond and to market and advertise his own services.

31.     Amir Shabazz has publicly acknowledged the value of social media "followers," when on August 28, 2017, he posted "So I had an interview today for a Radio Personality job and I was asked about my [Instagram] follower numbers" and "Follow me on IG @HennyTalk75." *See* Exhibit E. On September 3, 2017, he posted to iPower Richmond's 12,500 followers: "Instagram is @hennytalk75 follow me. Im trying to get 10k followers. Thank you twitter." *See* Exhibit F.

32.     iPower Richmond first reported the issue to Defendant, Twitter, Inc. on or about August 12, 2017 (Twitter Case #64960496) and repeatedly through the month of August (Twitter Case #66223256).

33.     To date, Defendant Twitter, Inc. has taken no action to resolve this matter.

34.     Upon information and belief, the total number of followers on the stolen Twitter Account has decreased from approximately 12,500 to approximately 12,400 over the past month, indicating a permanent loss of value likely caused by Amir Shabazz.

35.     From approximately August 11, 2017 to the present, and ongoing, Amir Shabazz's actions have substantially injured iPower Richmond's economic interests.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Defend Trade Secrets Act (18 U.S.C. § 1832, et seq.)
### (Defendant Amir Shabazz)

36.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

37.     At all relevant times, Plaintiff has taken reasonable measures to keep Plaintiff's confidential information and business intelligence protected, confidential and secret.

38.     Plaintiff's confidential information has actual and potential independent economic value from the fact that it is not generally known to, and cannot be readily ascertained through proper means by others who can obtain economic value from its disclosure and/or use.

39.     Indeed, Plaintiff's confidential information and business intelligence – as separate components, all together, and/or in combination with other components – are valuable and lucrative assets constituting legally protectable trade secrets.

40.     Upon information and belief, Defendant Shabazz has acquired Plaintiff's trade secrets knowing or having reason to know that such acquisition occurred through improper means, such as Amir Shabazz's unauthorized access, use and changes to iPower Richmond's Twitter Account, and/or his undisclosed and unauthorized use of a computer or computer network to access, use and change such information.

41.     Upon information and belief, Defendant Shabazz has disclosed and/or used Plaintiff's trade secrets without Plaintiff's consent, and with knowledge that the trade secrets were acquired through improper means.

42.     Upon information and belief, Defendant Shabazz has disclosed and/or used Plaintiff's trade secrets without Plaintiff's consent, knowing and/or having reason to know that the trade secrets were provided from or through a person or persons who used improper means to acquire them.

43.     Upon information and belief, Defendant Shabazz has disclosed and/or used Plaintiff's trade secrets without Plaintiff's consent, knowing and/or having reason to know that the trade secrets were obtained or acquired under circumstances giving rise to a duty to maintain their secrecy and/or limit their use.

44.     Upon information and belief, Defendant Shabazz has disclosed and/or used Plaintiff's trade secrets without Plaintiff's consent, knowing and/or having reason to know that the trade secrets were obtained or acquired from or through a person or persons who owed a duty to Plaintiff to maintain their secrecy and/or limit their use.

45.     By engaging in the conduct described throughout this Complaint, Defendant Shabazz has misappropriated Plaintiff's confidential information and business intelligence constituting trade secrets to the detriment of Plaintiff and for the Defendant's own commercial

and economic advantage, in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1832, et seq.

46.     Defendant has used and benefited from, and will continue to use and/or benefit from his misappropriation of Plaintiff's trade secrets for his own commercial and economic advantage, in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1832, et seq.

47.     Defendant Shabazz's conduct was willful and malicious.

48.     Defendant Shabazz's conduct has caused and will continue to cause severe and immediate monetary injuries to Plaintiff, including damage to its reputation and goodwill for which it has no adequate remedy at law.

WHEREFORE, the Plaintiff prays for judgment as set forth below.

## COUNT II
### Violation of the Virginia Uniform Trade Secrets Act (Va. Code Ann. §§ 59.1-336 to 343)
### (Defendant Amir Shabazz)

49.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

50.     At all relevant times, Plaintiff has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its confidential information and business intelligence, including trade secrets, which are valuable and lucrative assets of iPower Richmond and for which independent actual and potential economic value is derived from not being known or easily accessible to other persons who can obtain economic value from its use or disclosure.

51.     Upon information and belief, Defendant has misappropriated Plaintiff's confidential information and trade secrets, including but not limited to its Twitter Account, Twitter handle, Twitter username and/or Twitter followers.

52.     By engaging in the conduct described throughout this Complaint, Defendant has acquired, disclosed and/or used Plaintiff's trade secrets and confidential information through improper and/or unauthorized means, without the consent of the Plaintiff, to the detriment of the Plaintiff, with actual and/or constructive advantage, in violation of the Virginia Uniform Trade Secret Act, Virginia Code §§ 59.1-336, et seq.

53.     Any and all confidential information and trade secrets owned or possessed by Defendant that were acquired by Defendant at any time after the termination of Amir Shabazz on August 11, 2017 were derived utilizing improper means to acquire them (including use of a computer or computer network without authority) and/or were acquired under circumstances giving rise to a duty to maintain their secrecy and/or derived from or through a person who owed a duty to Plaintiff to maintain their secrecy.

54.     Defendant Shabazz has used and will use and/or benefit from his misappropriation of Plaintiff's trade secrets and confidential information, without the consent of the Plaintiff, to the detriment of the Plaintiff, and for the Defendant's own commercial advantage, in violation of the Virginia Uniform Trade Secret Act, Virginia Code §§ 59.1-336, et seq.

55.     Defendant Shabazz's conduct has caused and will continue to cause severe and immediate monetary injuries, including damage to the reputation and goodwill of Plaintiff, for which it has no adequate remedy at law

WHEREFORE, the Plaintiff prays for judgment as set forth below.

## COUNT III
### Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)
### (Defendant Amir Shabazz)

56.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

57.     Upon information and belief, Plaintiff's computers and Twitter Account are involved in interstate and foreign commerce and communication, and are protected under 18 U.S.C. § 1030(e)(2).

58.     Upon information and belief, Defendant Shabazz knowingly and intentionally accessed Plaintiff's computers without authorization or in excess of authorization following his termination on August 11, 2017.

59.     Upon information and belief, after gaining unauthorized access to Plaintiff iPower Richmond's Twitter Account, Defendant Shabazz obtained and used valuable information in transactions involving interstate and/or foreign communications. This information included, among other things, a list of iPower Richmond's followers, and the means of sending messages to those followers. The use included sending unauthorized messages from iRadio Richmond's Twitter account without authorization and copying or converting proprietary data and re-displaying and/or re-using it as Defendant's own.

60.     Defendant knowingly, willfully, and with an intent to defraud, accessed Plaintiff iRadio Richmond's Twitter account and/or computers without authorization or in excess of authorization and obtained valuable information that, upon information and belief, Defendant used to obtain something of value.

61.     Defendant Shabazz's conduct has caused a loss to Plaintiff iRadio Richmond in excess of $5,000.

62. Plaintiff has been damaged by Defendant's actions, including being forced to expend resources to investigate the unauthorized access and abuse of its computer network and/or social media account.

63. Plaintiff has suffered irreparable and incalculable harm and injuries resulting from Defendant Shabazz's conduct, which harm will continue unless Defendant is enjoined from further unauthorized use of iRadio Richmond's protected computer network and/or social media account. Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff prays for judgment as set forth below.

**COUNT IV**
**Violations of the Stored Communications Act (18 U.S.C. §§ 2701-2712)**
**(Defendant Amir Shabazz)**

64. Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

65. The Stored Communications Act incorporates the definition of an "electronic communication" from the Electronic Communication Privacy Act, 18 U.S.C. § 2510, et seq.: "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…"

66. The statutes define "electronic storage" as "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510 (17)(A).

67. It is unlawful for a person to obtain access to stored communications on another's computer system without authorization. 18 U.S.C. § 2701.

68.     Upon information and belief, the stolen Twitter account contains electronically stored, electronic communications to and from the Plaintiff.

69.     Upon information and belief, Defendant Shabazz violated 18 U.S.C. 121 § 2701(a)(1) when he intentionally accessed the Plaintiff's electronic communications without authorization and obtained, altered, or prevented authorized access to a wire or electronic communication in electronic storage.

70.     Upon information and belief, Defendant Shabazz violated 18 U.S.C. 121 § 2701(a)(2) when he intentionally exceeded authorization to access Plaintiff's communications and obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage by accessing files on the Plaintiff's Twitter Account without Plaintiff's permission.

71.     As a result of Defendant Shabazz's knowing and intentional access violation of 18 U.S.C. § 2701, the Plaintiff has suffered injuries to its privacy rights, and economic harm due to Defendant Shabazz's unjust enrichment at its expense.

WHEREFORE, the Plaintiff prays for judgment as set forth below.

## COUNT V
### Tortious Interference with Prospective Economic Advantage
### (Defendant Amir Shabazz)

72.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

73.     Plaintiff iPower Richmond has had, and continues to enjoy relationships with iPower Richmond Twitter followers and prospective users of the Account, and existing and prospective advertisers who pay for advertisements on iPower Richmond's website and/or radio station. Defendant Amir Shabazz, as a former agent and employee of Plaintiff iPower Richmond,

has extensive knowledge of those relationships. Mr. Shabazz knows the history of iPower Richmond's relationships with the iPower Richmond followers and advertisers in detail, including which of those relationships contain the probability of future economic benefit to iPower Richmond, when, and on what terms, by reasons of iPower Richmond's ongoing marketing of its services to iPower Richmond's followers and advertisers.

74.     Defendant Shabazz engaged in wrongful conduct by misappropriating and using iPower Richmond's Confidential Information to access the Account, attempting to wrongly discredit iPower Richmond in the eyes of its followers, by and through his improper use of the Account, erasing material, attempting to destroy iPower Richmond's customers' confidence in iPower Richmond by and through his use of the Account, and after ceasing to perform services for iPower Richmond, using its relationships to promote himself.

75.     Defendant's wrongful conduct was designed to disrupt, and has in fact disrupted, as well as adversely affected Plaintiff's economic relationships with its followers and prospective users of the Account, and iPower Richmond's existing and prospective advertisers who buy advertisements, in that as a result of Defendants' conduct, there is decreased traffic to Plaintiff's website through the Account, which in turn decreases the number of website pageviews and discourages listeners from listening, and advertisers from buying advertisements.

76.     Defendant Shabazz engaged in the wrongful conduct described above in an attempt to market and advertise his services and the services of his employer all at the expense of the Plaintiff, iPower Richmond. The Defendant's conduct constitutes interference with the Plaintiff's prospective economic advantage.

77.     As a direct and proximate result of Defendant Shabazz's wrongful acts, Plaintiff has suffered damage to its business and business relationships by way of lost advertising

revenue, as well as its reputation and goodwill in excess of the minimum jurisdiction of this Court.

78.     Defendant Shabazz's aforementioned conduct was willful and oppressive, fraudulent, or malicious, and the Plaintiff is entitled to punitive damages.

79.     Unless and until enjoined by order of this Court, Defendant Shabazz will continue his illegal efforts and scheme to interfere with Plaintiff's prospective economic advantage and cause damage to its reputation and goodwill. Plaintiff has no adequate remedy at law for the irreparable injuries Defendant has caused and continues to cause, including, but not limited to damage to Plaintiff's prospective economic advantage, business, reputation and goodwill.

WHEREFORE, the Plaintiff prays for judgment as set forth below.

**COUNT VI**
**Conversion**
**(Defendant Amir Shabazz)**

80.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

81.     At all times herein mentioned, Plaintiff was and still is, the owner of the Twitter Account, and was, and still is, entitled to possession of the Account. The Account and the approximately 12,500 followers generated by the Account, were and are the sole property of iPower Richmond.

82.     Plaintiff iPower Richmond gave Defendant Shabazz permission to use the Account while he acted as an agent of iPower Richmond. Once Amir Shabazz ceased to work for iPower Richmond, he was required to cease all access to the Account of iPower Richmond.

83.     On or about August 11 or 12, 2017, unbeknownst to Plaintiff, and without Plaintiff's consent, Defendant Amir Shabazz took possession, exercised dominion and control

over, and wrongfully converted the Account to his own use by changing the handle on the account from @iPowerRichmond to @RealTalkofVa, and then again to @HennyTalk75. Defendant has used and continues to use the Account with the handle @HennyTalk75 to communicate with and market his services to Plaintiff's Followers.

84.     According to industry standards, each Twitter follower is currently valued at approximately $2.50 per month. Given the Account's approximately 12,500 followers, on or about August 11, 2017, the Account had a value of approximately $31,250 per month.

85.     Defendant Shabazz's taking, possession, and/or exercise of dominion and control over Plaintiff's property was inconsistent with Plaintiff's rights as owner of such property.

86.     Between the time of Defendant Shabazz's conversion of the Account to his own use, and the filing of this action, Plaintiff iPower Richmond has expended time and money in pursuit of the wrongfully converted Account, all to its further damage, in an amount to be proved at trial.

87.     Defendant Shabazz's acts as alleged above were willful, wanton, malicious, oppressive, and justify the awarding of punitive damages.

WHEREFORE, the Plaintiff prays for judgment as set forth below.

### COUNT VII
### Unjust Enrichment
### (Defendant Amir Shabazz)

88.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

89.     As a result of the actions outlined above, Defendant Shabazz has received monetary, informational, and competitive benefits and services as a result of the time, effort,

labor, materials and cost expended by Plaintiff over several years to create, utilize, and enjoy the economic benefits of its confidential information, its business intelligence, and its trade secrets.

90.     Defendant Shabazz has evidenced by his own actions that he acknowledges the receipt of the monetary, informational, and competitive benefits and services he has received at the expense of and detriment to Plaintiff iPower Richmond, and that he has actual knowledge of the benefits he has improperly obtained from iPower Richmond.

91.     Defendant's Shabazz's receipt of those benefits and services has allowed him to use Plaintiff's own proprietary knowledge and information to drive existing and future clients, listeners, accounts, followers and/or advertisers away from iPower Richmond for the Defendant Shabazz's benefit, in amounts exceeding the jurisdictional requirement of this Court.

92.     Defendant Shabazz's receipt of these benefits has unjustly enriched him, and the circumstances surrounding his receipt and enjoyment of those benefits makes it inequitable and unjust for him to retain such benefits without payment of their value to the Plaintiff.

WHEREFORE, the Plaintiff prays for judgment as set forth below.

## COUNT VIII
## Quantum Meruit
### (Defendant Amir Shabazz)

93.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

94.     As a result of the actions outlined above, Defendant Shabazz has received monetary, informational, and competitive benefits and services as a result of the time, effort, labor, materials and cost expended by Plaintiff over several years to create, utilize, and enjoy the economic benefits of its confidential information, its business intelligence, and its trade secrets.

95.     Defendant Shabazz has evidenced by his actions that he acknowledges the receipt of the monetary, informational, and competitive benefits and services he has received at the expense of and detriment to Plaintiff iPower Richmond and that he has actual knowledge of the benefits he has improperly obtained from Plaintiff iPower Richmond

96.     Defendant Shabazz's receipt of those benefits and services has allowed him to compete using Plaintiff's own proprietary knowledge and information, and to drive existing and future clients, listeners, accounts, followers and/or advertisers away from Plaintiff iPower Richmond for his benefit, in amounts exceeding the jurisdictional requirement of this Court.

97.     Defendant Shabazz's receipt of these benefits and services has provided direct and indirect monetary benefits to him, and the circumstances surrounding his receipt and enjoyment of those benefits and services makes it inequitable and unjust for Defendant Shabazz to retain such benefits without payment of their value to Plaintiff.

WHEREFORE, the Plaintiff prays for judgment as set forth below.

## COUNT IX
### Trademark Infringement (15 U.S.C. § 1125(a))
### (Defendant Amir Shabazz)

98.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

99.     This claim is for trademark infringement under the laws of the United States, Section 43 (a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

100.    The Plaintiff is a radio station, "iPower Richmond" that has used the common law trademark and service mark "iPowerRichmond" for approximately a decade, and has used that trademark as part of its Twitter username or handle since approximately 2009.

101.    In August, 2017, Defendant Amir Shabazz stole the Plaintiff's Twitter account followers by improperly logging in to the iPower Richmond Twitter Account, changing the handle of the account to identify himself and then deleting all prior references to iPower Richmond.

102.    Upon information and belief, Defendant Amir Shabazz created a new account under the same handle (which was now "available" again through Twitter), and used his own password on that account, which has not been disclosed to iPower Richmond.

103.    Upon information and belief, Defendant Amir Shabazz is thus also using Plaintiff's "iPowerRichmond" mark on Twitter, through his use of the Twitter handle "@iPowerRichmond."

104.    Defendant Shabazz's use of the "@iPowerRichmond" handle is likely to cause confusion, mistake, and to deceive consumers.

105.    Defendant Shabazz's actions constitute a blatant attempt to confuse the consuming public and to trade off iPower Richmond's goodwill. For example, the social media link from iPower Richmond's website to its Twitter feed has not changed since August 11, 2017, but now connects all visitors to the confusing, deceptive and misleading page maintained by Defendant Amir Shabazz. *See* Exhibit G – "Contact Us" section of iPower Richmond website, with link to Twitter page and current Twitter page for @iPowerRichmond, maintained by Defendant Amir Shabazz.

106.    Defendant Shabazz has acted knowingly and willfully, with full knowledge of the likelihood of confusion and with the intent to deceive consumers in order to trade off the efforts and earned goodwill and reputation of iPower Richmond.

107.     By reason of the foregoing acts of trademark infringement, Plaintiff has been injured in an amount not yet ascertained.

108.     Further, Defendant Shabazz has been unjustly enriched by virtue of his deception of consumers and misappropriation of Plaintiff's goodwill.

109.     In addition, as a result of Defendant Shabazz's acts of infringement, Plaintiff iPower Richmond has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, including damage to iPower Richmond's goodwill. Unless this Court enjoins Defendant Shabazz's acts of infringement, iPower Richmond will continue to suffer an irreparable harm.

110.     Defendant Shabazz's actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to iPower Richmond of treble damages and profits, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

### COUNT X
### False Designation of Origin (15 U.S.C. § 1125(a))
### (Defendant Amir Shabazz)

111.     Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

112.     Defendant Shabazz's use of the "iPowerRichmond" mark in interstate commerce without iPower Richmond's consent, is a false designation of origin causing a likelihood of confusion, mistake, and deception as to source, sponsorship, affiliation, and/or connection in the minds of the public.

113.     Defendant Shabazz's conduct has infringed Plaintiff iPower Richmond's trademark rights in violation of Section 43 (a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

114.    Defendant Shabazz's actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to Plaintiff iPower Richmond, Inc. of treble damages and profits, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

**COUNT XI**
**Trademark Dilution (15 U.S.C. § 1125(c))**
**(Defendant Amir Shabazz)**

115.    Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

116.    This claim is for trademark dilution under the laws of the United States, Section 43 of The Lanham Act, 15 U.S.C. § 1125(c). Because of the substantive investment that Plaintiff iPower Richmond has made in marketing its business, throughout years of continuous use in commerce, including advertising and extensive marketing, Plaintiff's service marks and trademarks have become instantly recognizable and distinctive in the radio industry, have gained secondary meaning, and have become both distinctive and famous. Thus, Plaintiff iPower Richmond's marks qualify as "famous marks" under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c).

117.    Defendant Shabazz's unauthorized use of the iPower Richmond mark dilutes the capacity of iPower Richmond's marks to identify and distinguish its services.

118.    By reason of the foregoing acts of trademark dilution, Plaintiff has been injured in an amount not yet ascertained.

119.    Further, Defendant Shabazz has been unjustly enriched by virtue of their dilution of Plaintiff iPower Richmond's marks.

120.    In addition, as a result of Defendant Shabazz's acts of infringement, iPower Richmond has suffered and will continue to suffer irreparable harm for which it has no adequate

remedy at law, including damage to its goodwill. Unless this Court enjoins Defendant Shabazz's acts of infringement, the Plaintiff will continue to suffer irreparable harm.

121. Defendant Shabazz's actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to Plaintiff of treble damages and profits, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

**COUNT XII**
**Trademark Infringement (Common Law)**
**(Defendant Amir Shabazz)**

122. Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

123. Plaintiff's marks are valid service marks and trademarks, and Plaintiff iPower Richmond has used the marks before Defendant.

124. Defendant Shabazz's use of the iPower Richmond mark is likely to cause confusion, mistake, and to deceive consumers.

125. Defendant Shabazz's actions constitute a blatant attempt to confuse the consuming public and to trade off iPower Richmond's goodwill.

126. Defendant Shabazz has acted knowingly and willfully, with full knowledge of the likelihood of confusion and with the intent to deceive consumers in order to trade off the efforts and earned goodwill and reputation of Plaintiff iPower Richmond.

127. By reason of the foregoing acts of trademark infringement, Plaintiff has been injured in an amount not yet ascertained.

128. Further, Defendant Shabazz has been unjustly enriched by virtue of his deception of consumers and misappropriation of Plaintiff iPower Richmond's goodwill. On information and belief, Defendant Shabazz has been unjustly enriched in an amount that exceeds $75,000.

129.    In addition, as a result of Defendant Shabazz's acts of infringement, Plaintiff iPower Richmond has suffered and will continue to suffer irreparable harm for which iPower Richmond has no adequate remedy at law, including damage to its goodwill.  Unless this Court enjoins Defendant Shabazz's acts of infringement, Plaintiff iPower Richmond will continue to suffer an irreparable harm.

## COUNT XIII
### Contributory Trademark Infringement
### (Defendant Twitter, Inc.)

130.    Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

131.    The actions of Defendant Twitter, Inc., described above and specifically, without limitation, its knowledge, participation and inducement of the unauthorized use of Plaintiff iPower Richmond's Twitter Account and followers, and protected trademark information constitutes vicarious trademark infringement in violation of federal law and the laws of the Commonwealth of Virginia.

132.    On or around August 11, 2017, through the online reporting system, Plaintiff informed Defendant Twitter, Inc. of Defendant Shabazz's above-described acts of infringement and impersonation. On or around August 28, 2017, Plaintiff sent a letter to Defendant Twitter, Inc., again describing Defendant Shabazz's acts of infringement and impersonation. However, to date, Defendant Twitter, Inc. has failed to act.

133.    Defendant Twitter, Inc. has the ability to take corrective action to control the actions of the Defendant Amir Shabazz, has the authority to bind all users and exercise control over the Accounts at issue; however, Defendant Twitter, Inc. has failed to take corrective action

or control over the Accounts at issue. Upon information and belief, Defendant Twitter, Inc. derives financial benefit from its failure to act.

134. The actions of Defendant Shabazz, if not enjoined, will continue.

135. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, consisting of, among other things, diminution in the value of and goodwill associated with the iPower Richmond mark, and injury to the Plaintiff's business.

136. Upon information and belief, the Defendants actions as described above were, and continue to be deliberate and willful.

## COUNT XIV
### Negligence
### (Defendant Twitter, Inc.)

137. Plaintiff refers to and incorporates all above paragraphs as though fully set forth herein.

138. Defendant, Twitter, Inc. has specific policies against impersonation, harassment, trademark infringement, copyright infringement, graphic content, unlawful use, impersonation, multiple account abuse, and "username squatting." *See* Exhibit H – "The Twitter Rules," available at: https://support.twitter.com/articles/18311 (last accessed on September 14, 2017).

139. According to Twitter, "All users must adhere to the policies set forth in the Twitter Rules. Failure to do so may result in the temporary locking and/or permanent suspension of account(s)." *Id.*

140. Plaintiff informed Defendant Twitter about Mr. Shabazz's violations of "The Twitter Rules" and was told "Thanks for letting us know. If we find that this account is violating the Twitter Rules… we will take action on it." *See* Exhibit I – Violation of Twitter Rules Report to Twitter.

141. At the time of this filing, Defendant Twitter has taken no such action.

142. Defendant Twitter owes a duty to its users, including Plaintiff iPower Richmond, to comply with its own policies and to enforce its own rules when informed of violations of those rules.

143. Defendant Twitter's failure to take any action in response to the reported violations of its own rules and policies constitutes a breach of its duty to Plaintiff.

144. Defendant Twitter's breach of its duty has proximately caused damages to Plaintiff, including economic harm and damage to its business, as described above.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court enter judgment in its favor against Defendants Amir Shabazz and Twitter, jointly and severally, and award the Plaintiff damages as well as injunctive relief as follows:

(a) A temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining Defendant Shabazz and all persons acting or claiming to act under, in concert with, or for Defendant Shabazz from:

(1) Engaging in any solicitation of iPower Richmond's followers;

(2) Communicating with any of iPower Richmond's followers;

(3) Using, copying, dealing with, disclosing, trading, or otherwise exploiting or misappropriating iPower Richmond's Confidential Information in order to, including but without limitation, communicate with iPower Richmond's followers;

(4) Destroying any documents or files of any kind, actively or passively, whether in written or electronic form, that relate in any way to iPower Richmond's employment of Amir Shabazz, iPower Richmond's Confidential Information, and/or iPower Richmond's actual or prospective followers; and

(5) Continuing to "squat" on the @iPowerRichmond Twitter Handle, or otherwise maintain the Twitter Account, and from otherwise continuing to infringe upon and/or dilute iPower Richmond's intellectual property rights, trademarks and/or famous marks.

(b) A temporary restraining order, a preliminary injunction, and a permanent injunction, requiring Defendant Shabazz and all persons acting or claiming to act under, in concert with, or for Defendant Shabazz, to return all of iPower Richmond's Confidential Information in their custody, possession, or control to iPower Richmond, including but without limitation, the iPower Richmond Twitter Account with all followers;

(c) For general and compensatory damages, plus interest, due to the conduct of Defendants complained of herein and in at least the amount of the property converted;

(d) For damages for the proximate and foreseeable loss resulting from Defendant's conversion;

(e) For general damages in the amount necessary to prevent the unjust enrichment of Defendants;

(f) For Defendants' profits pursuant to 15 U.S.C. § 1117;

(g) For treble damages pursuant to 15 U.S.C. § 1117;

(h)     For the maximum statutory and punitive damages available under 18 U.S.C. §§ 2701, including a minimum of $1,000 for each violation of the Stored Communications Act.

(i)     For punitive damages;

(j)     For all statutory relief available pursuant to the Defend Trade Secrets Act, the Virginia Uniform Trade Secrets Act, the Stored Communications Act, and/or the Computer Fraud and Abuse Act.

(k)     For reasonable attorneys' fees;

(l)     For all costs incurred; and

(m)     For other such relief as the court may deem proper.

Dated: September 15, 2017                    Respectfully submitted,

  /s/ Nicholas G. Hallenbeck
Nicholas G. Hallenbeck, Esq. (VSB No. 77889)
Yuo-Fong Amato, Esq. (*Pro Hac Vice* Pending)
GORDON REES SCULLY MANSUKHANI LLP
1300 I Street, N.W., Suite 825
Washington, D.C. 20005
(202) 399-1009
(202) 800-2999 (Facsimile)
nhallenbeck@grsm.com
bamato@grsm.com

*Counsel for Plaintiff*